UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* JOHN CARBON and STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS *ex rel.* JOHN CARBON, <br>     Plaintiffs/Relators, <br><br>     v. <br><br> CARE NEW ENGLAND HEALTH SYSTEM, KENT COUNTY MEMORIAL HOSPITAL, KINDRED REHABILITATION SERVICES, INC., <br>     Defendants. | No. 1:18-CV-000435-JJM-LDA |

## MEMORANDUM AND ORDER

JOHN J. MCCONNELL, JR., United States District Chief Judge.

Before the Court is Defendant Kindred Rehab Services, Inc.'s ("Kindred") Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6). ECF No. 48. Realtor Dr. John Carbon, D.O. alleges that Kindred violated the False Claims Act by admitting non-qualifying patients to Kent County Memorial Hospital's ("Kent") Acute Rehabilitation Unit ("ARU"). ECF No. 45. Because this claim is brought under the False Claims Act ("FCA"), pursuant to 31 U.S.C. § 3729, a plaintiff's complaint is subject to the heightened pleading standard of Fed. R. Civ. P. 9(b). Despite Kindred's arguments to the contrary, the Court finds that Dr. Carbon's Amended Complaint has pleaded sufficiently particular facts to meet the 9(b) standard. Therefore, Defendant Kindred's Motion to Dismiss is DENIED.

I.   **BACKGROUND**[1]

Dr. Carbon was the Medical Director at Kent. ECF No. 45 at ¶ 47. As Medical Director, Dr. Carbon was the Medical Director for the ARU at Kent. *Id.* In this capacity, Dr. Carbon made admittance determinations of patients to the ARU, often after meeting with them to assess their conditions. *Id.* at ¶ 50; *see also* ECF No. 51 at 11.

Defendant Care New England ("CNE") owned and operated Kent. ECF No. 45 at ¶ 12. Kindred and CNE collectively ran the ARU at Kent. *Id.* at ¶ 229. The Kent ARU, managed by Kindred, is an Inpatient Rehabilitation Facility ("IRF"). *Id.* at ¶ 14. IRFs are subject to "strict guidelines" when admitting patients. ECF No. 51 at 6. More particularly, Medicare Part A covers IRF stays, and those stays are paid for under what is known as a prospective payment system. *Id.* at 5–6. Prospective payment systems determine the payment rate for inpatient rehabilitation facilities. 42 U.S.C. § 1395ww(j)(3). For payment to be submitted, the services must be "reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member." 42 U.S.C. § 1395y(a)(1)(A).

Dr. Carbon and his superiors often disagreed over whether admission to the ARU would be proper. ECF No. 45 at ¶ 55.

---

[1] It is alleged that Dr. Carbon's amendments to his Complaint added "little to original complaint . . . ." ECF No. 48-1 at 2. This contention does not affect the forthcoming factual analysis. The Court properly granted Plaintiff's Motion to Amend, which was unopposed by Kindred. ECF No. 43. As such, the Court will view the facts in the Amended Complaint in the light most favorable to Dr. Carbon, the nonmoving party. *See Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 17 (1st Cir. 2011).

> For example, over the year 2013-2014, Dr. Carbon was required to admit G.S.,
> the nonagenarian mother of a top Kent administrator on multiple occasions.
> Dr. Carbon explained that the mother was unable to participate in the
> intensive therapy, but was directed to accept her nevertheless. He was told
> that this was what he needed to do to keep his job. G.S. was a Medicare
> recipient.[2]

ECF No. 51 at 12 (citations omitted). Dr. Carbon alleges that several similarly

admitted patients[3] may have been better served by specialty doctors as opposed to an

acute rehab program. *See, e.g., id.* at ¶ 69.

Despite Dr. Carbon's role of determining admission of patients to the ARU,

Jessica Ackerman also began taking an active role in pre-admissions evaluations *Id.*

at ¶ 73, 95. Ms. Ackerman was the Kindred admissions coordinator for the Kent

ARU, *id.* at ¶ 73, and a licensed speech pathologist,[4] *id.* at ¶ 95. Essentially, Ms.

Ackerman served as a go-between the potential admittees and Dr. Carbon. *See* ECF

No. 48-1 at 14. However, "[t]he clinical liaison (*i.e.*, Ms. Ackerman) has *no* role in . .

. post-admission *physician* evaluation." *Ibid.* (emphasis added).

Ms. Ackerman's lack of medical expertise often led to improper

recommendations as to the admission for non-qualifying patients, Dr. Carbon alleges.

*Id.* at ¶ 73. Due to the overlapping roles of Dr. Carbon, as the individual who

determines admissions, and Ms. Ackerman, as admissions coordinator, there was a

high degree of conflict between the two. *See id.* at ¶¶ 73-78. As a result of their

---

[2] Kindred "[a]ccept[s] as true for purposes of this motion that Relator [Dr. Carbon] was 'pressured' by Kindred to accept these referrals." ECF No. 53 at 2.

[3] Dr. Carbon cites to two other instances where this occurred. *See, e.g.*, ECF No. 51 at 12.

[4] *See also infra* note 9.

tenuous relationship, Ms. Ackerman worked with other employees to admit such patients. *Id.* at ¶¶ 101–02.

One such patient, known as L.P., was admitted to the ARU upon the recommendation of Ms. Ackerman. *Id.* at ¶ 103. L.P. was unable to advance nor actively engage while in the ARU because of their severe malnutrition.[5] *Id.* at ¶ 103. Relatedly, P.I. was admitted the ARU despite an inability to properly participate in therapy. *Id.* at ¶ 118. Ms. Ackerman did not disclose that P.I.'s alcoholism and mental health issues would prevent his advancement in the ARU. *Id.* at ¶ 118. One final example from the Amended Complaint was R.F., who was discharged after five days in the ARU because of the overstatement of their level of impairment.[6] *Id.* at ¶ 117. All three of these individuals were Medicare recipients. *Id.* at ¶¶ 103, 117, 118.

## II.   STANDARD OF REVIEW

Kindred moves, under Fed. R. Civ. P. 12(b)(6), to dismiss the claims brought against them. The complaint must have sufficient factual allegations that plausibly state a claim upon which a court may grant relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This standard requires more than a recitation of elements and must allow the court to draw a reasonable inference that a defendant is liable. *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). The Court must accept a plaintiff's

---

[5] L.P. is of particular importance because their only insurer was Medicare. ECF No. 51 at 31; *see infra* Section III. Because P.I. and R.F. are referred to as Medicare "recipients" they may have had other insurers as well. *See* ECF No. 44 at ¶¶ 117–118.

[6] There are other examples that are cited in the Amended Complaint. *See, e.g.*, ECF No. 44 at ¶ 125. However, for reasons that will become clear later, these three are sufficient for stating a plausible 9(b) claim.

allegations as true and construe them in the light most favorable to the plaintiff. *Gargano v. Liberty Int'l Underwriters*, 572 F.3d 45, 48 (1st Cir. 2009).

"Rule 9(b) applies to FCA claims," rather than the traditional Rule 8(a) standard.[7]  *U.S. ex rel. Rost v. Pfizer, Inc.*, 507 F.3d 720, 731 (1st Cir. 2007).  "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, *intent*, knowledge, and other conditions of a person's mind *may be alleged generally*."  Fed. R. Civ. P. 9(b) (emphasis added).  "In the FCA context, [the First Circuit] has previously held that the rule requires relators to provide details that identify particular false claims for payment that were submitted to the government."  *Rost*, 507 F.3d at 731 (1st Cir. 2007) (internal quotation omitted).  This is illustrative of a heightened pleading standard.  Therefore, to survive a Rule 12(b)(6) motion for failure to state a claim, a plaintiff must overcome this heightened pleading standard.

The First Circuit has "repeatedly emphasized that there is no checklist of mandatory requirements" that a complaint must satisfy to overcome the heightened pleading standard.  *Hagerty ex rel. United States v. Cyberonics, Inc.*, 844 F.3d 26, 31 (1st Cir. 2016).  Nonetheless, complaints subject to Rule 9(b) "invariably are inadequate unless they are linked to allegations, stated with particularity, of the actual false claims submitted to the government that constitute the essential element of an FCA qui tam action."  *U.S. ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360

---

[7] The Federal Rules of Civil Procedure normally require a complaint to set forth merely "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

F.3d 220, 232 (1st Cir. 2004).  Thus, a plaintiff must provide at least some identifying content to satisfy Rule 9(b).  *Id.* at 233.

## III.   DISCUSSION[8]

Whether a claim is false is governed by 31 U.S.C. § 3729(a)(1).  The parties rely on the first two provisions of the statute, which involves those who "(A) knowingly present[], or cause[] to be presented, a false or fraudulent claim for payment or approval;" or "(B) knowingly make[], use[], or cause[] to be made or used, a false record or statement material to a false or fraudulent claim."  31 U.S.C. § 3729(a)(1).

"FCA liability continues to be circumscribed by strict enforcement of the Act's materiality and scienter requirements."  *U.S. ex rel. Jones v. Brigham & Women's Hosp.*, 678 F.3d 72, 85 (1st Cir. 2012).  "[M]ateriality look[s] to the effect on the likely or actual behavior of the recipient of the alleged misrepresentation."  *Universal Health Servs., Inc. v. United States*, 136 S. Ct. 1989, 2002 (2016) (internal quotations omitted).  "Materiality, in addition, cannot be found where noncompliance is minor or insubstantial."  *Id.* at 2003.  The scienter requirement relates to the knowledge of a submission of a false claim.  *See Guilfoile v. Shields,* 913 F.3d 178, 187 (1st Cir. 2019).

> A person acts "knowingly" if he or she "(1) had actual knowledge of the information; (2) acts in deliberate ignorance of the truth or falsity of the information; or (3) acts in reckless disregard of the truth or falsity of the information."  The FCA also stated that the term "knowingly" requires "no proof of specific intent to defraud."

---

[8] The Rhode Island False Claims Act is nearly identical to federal False Claims Act.  Therefore, the Court need not, and does not, address the state law claims now.

*U.S. ex rel. Hutcheson v. Blackstone Med., Inc.*, 647 F.3d 377, 380 (1st Cir. 2011) (citing 31. U.S.C. § 3729(b)).

As has been alluded to, the IRF admissions criteria are strict. For a patient to be properly covered by an IRF, a patient's claim must be "reasonable and necessary." 42 C.F.R. § 412.622(a)(3). Subject to limited exceptions, a potential patient must satisfy all four conditions to meet this standard: (1) there is "active and ongoing therapeutic intervention of multiple therapy disciplines (physical therapy, occupational therapy, speech-language pathology,[9] or prosthetics/orthotics therapy), one of which must be physical or occupational therapy;" (2) the patient "can reasonably be expected to actively participate in, and benefit from, an intensive rehabilitation therapy program;" (3) the patient "is sufficiently stable at the time of admission to the IRF to be able to actively participate in the intensive rehabilitation therapy program;" and (4) the patient is supervised by a rehabilitation physician. 42 C.F.R. § 412.622(a)(3)(i)–(iv). Patients who do not meet all four criteria shall not be admitted to an IRF, and claims submitted on the behalf of non-qualifying patients may potentially constitute a false claim.

Dr. Carbon identifies L.P., who, despite failing the pre-admissions screening,[10] was admitted to the ARU for their severe malnutrition. As a result of this condition,

---

[9] Although Ms. Ackerman was a speech pathologist, there is no evidence in the record that her primary role was to provide those services to patients. The record instead supports the notion that her primary role was in a more administrative capacity. *See supra* note **Error! Bookmark not defined.**.

[10] Pre-admissions screening appears to be a sufficient basis to support allegations of fraud. *See* ECF No. 51-2.

Dr. Carbon alleges, L.P. was unable to "actively engag[e] and advanc[e] while on the IRF." ECF No. 45 at ¶ 103. Viewing Dr. Carbon's factual contentions in the most favorable light to him, L.P.'s admission would violate 42 C.F.R. § 412.622. Therefore, it is reasonable to infer that claims submitted on L.P.'s behalf were fraudulent.[11] Additionally, Dr. Carbon alleges that P.I. was also unable and unwilling to actively participate in the ARU because of their underlying alcoholism. Claims submitted for P.I.'s treatment thus reach a similar conclusion.

Moreover, because L.P.'s only insurer was Medicare, their admission necessarily constituted a false Medicare claim. L.P. was improperly admitted to the ARU, which is an IRF, and because their only insurer was Medicare, the ARU must have billed Medicare for the improper admission.[12] Therefore, unless L.P. stayed in the ARU for a week free of charge, Dr. Carbon has plausibly plead, with sufficient particularity, that Ms. Ackerman "knowingly . . . cause[d] . . . to be presented, a false or fraudulent claim for payment or approval" in violation of 31 U.S.C. 3729(a)(1)(A).

Dr. Carbon plausibly alleges that Ms. Ackerman admitted, or caused to be admitted, at least three patients who did not meet the criteria enumerated in 42 C.F.R. § 412.622. Claims were then submitted on behalf of, at least, these three patients. Because those claims were potentially fraudulent in nature given their

---

[11] *See infra* note 14.

[12] There is no evidence in the record to support a contrary contention, nor does Kindred attempt to point to one. Though the Court recognizes that the burden is on Dr. Carbon to sufficiently plead his claim to overcome the 9(b) standard to establish its facial plausibility, the Court will also make reasonable inferences in the light most favorable to Dr. Carbon, who is the nonmoving party. *See Ashcroft v. Iqbal,* 556 U.S. 662, 663, (2009).

alleged illegitimacy, the Court finds it plausible that Ms. Ackerman "knowingly cause[d] to be made or used, a false record or statement material to a false or fraudulent claim," in violation of 31 U.S.C. 3729(a)(1)(B).

It may be contended that Dr. Carbon has not linked these improper admissions to any false or misleading payment, nor that Ms. Ackerman intended to defraud the government.

> [T]he relator must still connect the allegedly fraudulent statement to a planned claim on the government fisc, must show that the defendant intended the statement would have a material effect on the government's decision to pay a claim, and must plead the facts of the fraud with sufficient particularity to satisfy Rule 9(b).

*U.S. ex rel. Gagne v. City of Worcester*, 565 F.3d 40, 46, n.7 (1st Cir. 2009).

However, all three of these criteria are properly alleged to be met.[13] If a patient is admitted to the ARU, their insurance would be billed.  If the insurer is the government, then the government would be billed.  Thus, there is a logical connection between the admission of at least one patient, L.P., and improper billing.[14]

---

[13] This is not a standard, and the Court does not consider this list to be a "checklist."  It is presented solely to show that there are at least some criteria that may be overcome to satisfy Rule 9(b).

[14] This logical connection relies on the assumption that at least one of L.P., R.F., or P.I had their insurer billed.  This assumption is reasonable, given that: the financial returns on medical claims from the ARU were estimated by Dr. Carbon to be at least $6 million per year, *id.* at ¶ 229; "[a] recent newspaper article placed the Care New England loss in the millions of dollars per month" as a result the acquisition of "the failing Memorial Hospital system" by Care New England, *id.* at ¶ 228; and that it is incredibly unlikely that a lucrative entity such as a hospital, especially one undergoing alleged financial difficulties, would allow patients to stay and be treated for free when insurance is available.

Lastly, the Court finds that the scienter requirement is met. As 31 U.S.C. § 3729 explicitly states, the terms "knowing" and "knowingly" can be defined as a "reckless disregard of the truth or falsity of the information."[15] § 3729(b)(1)(A)(iii). There were several patients, at least three of which had Medicare, that were admitted to the ARU. Thus, their admission hardly seems likely an isolated incident. Instead, the allegations appear plausible that Ms. Ackerman acted recklessly with regards to the admission of patients to the ARU.[16] That Dr. Carbon was "pressured," as Kindred concedes,[17] only strengthens the conclusion that the scienter requirement is satisfied. *See also* ECF No. 53 at 32.

Dr. Carbon provided the names, the dates of admission, the location of admission, and the mechanism[18] of admission for L.P., R.F., and P.I. Indeed, Dr. Carbon has pleaded more than "some" content to overcome the heightened pleading standard of Rule 9(b). *See U.S. ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 233 (1st Cir. 2004). The Court finds Dr. Carbon's allegations sufficiently particular to satisfy the "who, . . . when, where, and how" of the alleged fraud, and prove fraud generally. Fed. R. Civ. P. 9(b); *see United States ex rel. Ge v. Takeda Pharm. Co.*, 737 F.3d 116, 123 (1st Cir. 2013).

---

[15] "As has long been recognized, the difference between knowledge and recklessness as to the consequences of one's actions is one of degree, not of kind." *Borden v. United States*, 141 S. Ct. 1817, 1844 (2021) (Kavanaugh, J., dissenting).

[16] There need not be proof of a specific intent to defraud. § 3729(b)(1)(B).

[17] *See supra* note 2.

[18] For example, in addition to Ms. Ackerman working with other employees (besides Dr. Carbon) to have patients admitted to the ARU, Ms. Ackerman often did not obtain informed consent for patients admitted to the ARU, nor were their families informed. *See* ECF No. 45 ¶¶ 121, 219.

IV.    CONCLUSION

For these reasons, the Court DENIES Defendant Kindred Rehab Services, Inc.'s ("Kindred") Motion to Dismiss (ECF No. 48) pursuant to Fed. R. Civ. P. 12(b)(6) because Plaintiff has pleaded facts with sufficient plausibility and particularity to overcome the heightened pleading standard under Rule 9(b).

IT IS SO ORDERED.

John J. McConnell, Jr.
United States District Court Chief Judge

October 19, 2021